24-1486 Porter v. Trans States Holdings. Mr. Mitchell, you may proceed. Good morning. It pleases the panel, Attorney Robert Mitchell on behalf of Appellant Ken Porter. A court should never dismiss a USERRA claim after an employer admits that the employee's was a motivating factor in the employee's adverse employment action. USERRA is a strict remedial statute that must be liberally construed to protect our service members, the individuals who drop their personal affairs, to take up our country's call to duty and in defense of our country. USERRA is a very simple statute that has a few simple requirements to present an initial showing of discrimination. One is that the individual is a service member. Two is that they work for the employer. Three is that they suffered an adverse employment action. And four, that their service membership was a motivating factor. In this case, what we see is that Captain Porter worked for Trans States Airlines, who I'll refer to as TSA, for 14 years. The last nine years of his tenure with the airline, he begged the airline for a promotion to the position of line check airman. In 2013, he was finally placed on the list to be promoted. There were only two pilots on that list. Out of the hundreds of pilots that worked for Trans States his name is redacted from the email. Ken Porter was not promoted. We know that for certain. When he asked the decision maker, who was Stuart Scott, why he was not promoted, he was not getting a straight answer. So he asked Randy Zender. Randy Zender was on the email chain that was sent to a group of decision makers to determine who was appropriate to be promoted. Randy Zender responded to him, and this is a fact that was taken as fact by the court, an undisputed fact. He stated, well, we also do a lot of military service. Was Mr. Zender a decision maker? If the court will turn to page 365 of the record, there was an email from the actual decision maker, who was Stuart Scott. He sent an email to a group of individuals asking them for their input. So he did not make the actual ultimate decision, but he was a part of the decision making process. And he responded to that email. The email states, I'm considering the following pilots for the position of line check airman. This was Mr. Porter's chance to be promoted to line check airman. There are only two individuals names on that list. Well, did you depose Mr. Scott if he was the decision maker and examine the motivations behind the failure to promote? I did not, your honor. Ken Porter alleges that the reason involved his military service. It was a motivating factor. The defendant never deposed him, did not get a declaration, and did not obtain an affidavit from Stuart Scott, who is no longer an employee for TSA. He works for the Federal Aviation Administration. The record is completely devoid of any input from Mr. Scott, controverting Mr. Porter's allegation that his military service was a motivating factor. Well, don't you have to show some linkage to Mr. Scott, the anti-military animus? The linkage to Mr. Scott was Randy Zender's to Mr. Porter that, well, you do a lot of military service. That is the link to the decision. Well, if we look at the cases on stray remarks, you do need to link that comment by Zender to the decision itself, the decision makers, right? Yes, ma'am. And if you don't have testimony from a decision maker, isn't it requiring speculation? I don't believe that it is, your honor, because again, Randy Zender was a recipient of that email. Randy Zender was a 36-year employee of the airline. He was in positions of management. He had a position that placed him in the know as to why the decision was made. And he specifically informed Captain Porter that one of the reasons was because of his military service. Randy Zender was a speaking agent for the corporation, for the company, and he explained to Captain Porter why the decision was made. Wouldn't Zender's statement be inadmissible here, say? I don't believe so, your honor. It's a statement against party interest. And as far as to what Mr. Zender says about the conversation, he simply claims a lack of knowledge. He doesn't recall it happening, and that's in his declaration. But he doesn't deny it. He states that he personally never used Ken Porter's service membership as a basis for Randy Zender to not make a decision to not promote him. However, the question is why did Stuart Scott make the decision to not promote Ken Porter? Randy Zender says the reason that Stuart Scott, one of those reasons, is because of his service membership. Who was selected instead of him? Interestingly enough, at the 30v6, the evidence that we solicited was that they don't know. And if you look at, there are six different declarations from folks in the know, CEOs, CIOs, VPs. All of them state that they don't know who was actually promoted to the position. And then the deposition transcript is that they have no idea which employees were recommended and which employee was ultimately selected for the position, which is interesting because there was an email that was sent out regarding who was recommended. It was Captain Ken Porter and only other individual. But the record shows that the TSA was not even aware of who was recommended. The email itself in the record is redacted. We attempted to ask about who was actually promoted at the 30v6 and we were unable to obtain any information from the witness about who was actually promoted to that position. What do we do with the evidence that the reason was actually Mr. Porter's attitude and criticism of TSA? The first that I would say about that, Your Honor, is one, this case was not decided on that issue. The court actually stated that Mr. Porter failed to make his prima facie case, which under you, Sarah, it's actually not called prima facie. It's called your initial burden. And the court decided that he didn't make his initial burden of showing of military motivation behind the decision. But if we were to take that step, the issues that I have with it again are that we have six declarations from six different people in positions of authority, all of whom say they don't know, they don't recall what happened. The other thing that strikes me as odd about the standard, you know, he wasn't worthy of being promoted to a management position defense is that there were only two pilots from a group of over 100 pilots that were on the short list for this promotion. It was Mr. Porter and one other individual. So it's difficult to conceive that a jury would think, well, he's one of only two pilots that's on the list of consideration, but he lacked the qualifications to be a manager. And then the reality is that when he left Trans States Airlines, he went to work for a legacy airline, one of the largest airlines in the world. And his career there is stellar. It does not reflect at all the characterizations that TSA made about him. Is that in the record? It is in his declaration at paragraph 25. And he states that almost word for word that his career with United Airlines does not even remotely reflect what TSA had to say about him. I thought the district court actually reached the issue of whether TSA had shown legitimate reasons. You know, it's an interesting order in that respect, Your Honor. What she did was said that didn't meet his initial burden. And her basis for that was that these were stray remarks, and it's only based on his sworn testimony, which is not enough to make it to a jury trial. She then addressed and gave treatment to TSA's defenses and extolled the virtues of TSA and what a great company they are to service members. But the ultimate decision that we're addressing here is whether or not this statement from Randy Zender is sufficient for Mr. Porter to have made his prima facie or initial burden showing that his military service was a motivating factor. Well, as I look at the order, it appeared to me that she imposed the Title VII standard on how you assess the defense. Is that correct? Is it the same? The first part of your question, Your Honor, is yes, that is correct. She did impose Title VII standards to the defense. The answer to the second part of your question is no, it is not the same. It is very different. The burden is different, right? Burden is absolutely different. Under McDonnell Douglas, under Title VII, the burden shifts to the plaintiff once a defense is asserted. A defense that there was another valid reason is sufficient under Title VII. Under USARA, the burden never shifts back to the plaintiff to prove the defendant's case. There are two steps to that test. It is not just there was another valid reason. There is a second required element, and that is that also his service membership had nothing to do with the decision. That's where this case falls short. If we have someone in a position of authority saying, well, you also do a lot of military service, you can't accomplish that second element of the defense. Title VII, McDonnell Douglas burden shifting is completely different than USARA. USARA is a much stricter statute, and it was written that way on purpose. Are there any cases that apply McDonnell Douglas to USARA claims? There are a lot of cases where district courts get a bit confused along the way. The courts have said that that's okay so long as the test is applied appropriately. In this case, it didn't. It wasn't applied appropriately. It was a default Title VII case. We look at their defense. We look at the things that they say about plaintiff, and we just say, okay, it's good enough. It wasn't appropriate. If you read the order, the analysis was not properly applied in this case. I say that to say this to answer your question, Your Honor. If the court had talked about and deferred to Title VII issues, but then actually applied the USARA elements properly, that has been accepted by courts. It's not acceptable to reference Title VII, apply Title VII, and disregard USARA's additional element of they must prove that the service membership had nothing to do with the two minutes for rebuttal. You may. Let's hear from Mr. Switzler. Good morning. My name is David Switzler. I represent the appellee in this case, Trans States Holding, Inc. May it please the court. Appellant raises five issues on appeal. The lower court, those are the lower court did not view all the evidence in the light Mr. Porter. The lower court failed to liberally construe USARA rights in favor of Mr. Porter. The lower court wrongfully applied the McDonald-Douglas burden-shifting standard. The lower court adopted TSH's pretext defenses wholesale, and that the lower court refused to submit the factual issue of intent to the jury. The law and the facts support the district court's order, and we ask that the district court be affirmed. In short, and I think we've heard this Mr. Porter is asking this court to find that a single comment by a non-decision maker, made at an undetermined time, unrelated to a specific alleged adverse action, is sufficient to survive summary judgment. Appellant is also asking this court that the question of employer... Excuse me. Yes. Part of the stray remark analysis depends on linking that remark to the decision itself, right? And here, as I understand it, the evidence is that Mr. Zender was privy to the reasons for the decision. He's on the email chain, and he told, in response to a question about why wasn't I promoted, he said, you do a lot of military service. Isn't that enough to link, provide the link between the remark and the decision? Your Honor, I don't believe that it is, because those are two unrelated conversations. With regard to the email chain, the only reference in that email to a negative trait of Mr. Porter is that he's an ALPA, ALPA hothead. There's no discussion of his military service in that email exchange on which Mr. Zender was CC. And he wasn't the decision maker, so I don't think Mr. Zender can speak to what Mr. Scott actually determined. Mr. Porter testified that he doesn't know who made the decision. And then with regard to the alleged comment, Mr. Porter's specific request is, I asked Randy Zender in his declaration why I kept getting passed over for promotion. Again, this has no nexus to which promotion he sought, because he was seeking promotions for three different positions. There's no timeline on which this conversation was made, and there's nothing in the record that shows that Mr. Zender ever had that conversation with Mr. Scott. So I don't think that it's direct evidence of what Mr. Scott decided was appropriate for making the promotional decisions. Are you saying that if he had evidence of a remark that indicated a general animus to military service and a lack of multiple promotions, that if he couldn't link it to a specific promotion, it's not enough? I do think that there needs to be a nexus to the alleged adverse action with the negative statement. I think that has to be connected, because we don't know over a 14-year period when any of this occurred or which linkages connect between any of the singular statement and any of the decisions to not promote. So I don't think by itself standing alone in a vacuum, that's enough, especially when it was made by a non-decision maker. If the company had a legitimate reason, temperament, but it also references, as Porter alleges, that his absences because of military service was at play, does that dissipate or neutralize the legitimate reasons? Your Honor, I don't believe that it does, because the evidence also shows that the company never denied any military leave and allowed Mr. Porter to take them as needed. The person making the comment was also a military member who took multiple leaves, who was then also multiple times promoted. Mr. Zender was a service member who took leave, who moved forward in the ranks. So there's plenty of law that suggests that a person in a protected class can discriminate against another person in that class, right? That is true, Your Honor. So he's not immune because he also is a military member. I do think the USAREUR case law consistently talks about reviewing any comments in context, and this was not in direct feedback to a specific promotion, and it wasn't made by an individual who made the decision. So I don't think, going back to Judge Tymkiewicz's question, that it dissipates the company's justification. I don't think you get to spend your career, a portion of your career, talking negatively about your employer and then be surprised when they decide not to let you be a leader within that organization. Well, I think Judge Tymkiewicz's question was, if you have evidence that the decision-maker was concerned about your negative comments about the company, but also considered negatively your military service, whether under this statute, as opposed to Title VII, that's enough for making out your initial burden. Thank you for that clarification. That's what I was asking. If I missed the question, then I apologize. Again, I think that there still needs to be a nexus to the decision-maker. My hypo and Judge Tymkiewicz's hypo, it was the decision-maker. If Mr. Zender made the decision, would this be enough? Is that the question, Your Honor? Yeah. The question is, if there are multiple motivations. One is, we don't like your negative comments about the company. The other is, we don't like that you're absent all the time for military service. If you have met your initial burden under this statute. I think under you, Sarah, if you can show that it is a motivating factor, yes, that is sufficient to allow for the case to move forward to the second part of the assessment, which is whether the employer can show that there was a legitimate reason standing alone that the same decision would have been made. On that second step, the court here applied the wrong burden, right? I don't agree with that, Your Honor. I believe that, in fact, I know that McDonnell and Douglas is never referenced in the decision. That surmises by opposing counsel. If we read this decision, the district court was responding to Mr. Porter's repeated assertion of pretext. The court goes through the proper analysis and says, first, you did not meet your burden, and the court could have ended the decision there. But the court goes further, and the court then says, the employer specifically made a sufficient showing that it would not have made, that it would have made the same decision standing alone, and the court could have ended it there. But then, the court then, in response to plaintiff's argument that this was pretext, goes on to address the pretext issue. And I think the court's language on that is telling, because specifically, you find it so I don't get this wrong. I'm in the opinion right now, so tell me what you are. The court specifically says, TSH has established legitimate independent reasons for declining selectness to Porter's promotions, and goes on to articulate those. But the court says in regard to pretext, TSH is entitled to summary judgment on his discrimination and retaliation claims for this additional reason. The court never supplanted the Lewis burden shifting. The court responded to and then addressed, if the assertion is pretext, they don't establish pretext. I don't think that there's any evidence that there was the McDonald Douglas burden shifting applied. There was no showing that the court ever shifted the burden of persuasion back to Mr. Porter when it simply responded to the pretext question raised by Mr. Porter. Well, I'll go back and look at it again, but it looks to me like the court thought Mr. Porter had the burden on that issue. So, I mean, the reason it matters, if we were to disagree with the court about the initial burden, then it would matter whether the court was right and applied the right standard here. Well, there are cases in which pretext is discussed under the USERRA standard, and one would be Bless Wesley's Horizon, and that's 473 F 3rd 11, where the court discusses pretext, and in that case, used pretext as part of the assessment about whether the company met its burden. It didn't shift the burden back to the employee, but it, again, responded to the concept of pretext, and does that negate the employer's proof when it established the legitimate reason standing alone? Does the record disclose whether there were multiple pilots who had taken military leave that were then promoted? You know, do we have any, I mean, you mentioned Mr. Zender, but was anything in the record developed that shows that the company routinely promoted military pilots? Mr. Zender is clearly a very good example, but undisputed facts number 11 and 12 in the motion for summary judgment established that TSA was an employer that was pro-military, that it had run awards and accolades for assisting and providing services to military members in their progression into the airline industry. So, I think there is evidence that, yes, this company was not adverse to individuals serving in the military. I don't think the record reflects individuals other than Mr. Porter and Mr. Zender and what their specific paths were, but it's undisputed that this employer was not anti-military, in fact, it was pro-military being a leader in these efforts. How does that fit into the analysis? I believe that much of the analysis talks about statements in context. And if you look at many of the decisions, they talk about who made the statement and what that person's relationship with the adverse decision, if there was one, and the military was. So, I think it comes back to this idea of, is the company adverse to the company, to the military? And according to the appellant's argument, they're looking at the third Sheehan factor, which there are four, and the third Sheehan factor is, was there evidence of military animus? And that's what this is intended to assert. Lots of evidence that shows the company was pro-military. And this one statement alleged that Mr. Zender said, well, you do a lot of military duty in a nonspecific context, shouldn't override the undisputed facts that the company supports the military. And without Mr. Stewart's testimony or evidence, there's no linkage between that statement and the decision to not promote him. What would satisfy his linkage? I believe there would have to be some evidence that Mr. Zender made those comments to Mr. Stewart or Mr. Scott, excuse me. I think there would have to be some evidence that Mr. Scott considered the military leave as part of his decision, but the record is devoid of that. So, there's nothing in the record that connects the two. Do we know which promotion specifically does concern? We don't, and that's one of the challenges of the case that is 20 years old, Your Honor. And that's one of the reasons that we raised the issue of latches was going back to 2006, at which time Mr. Porter was promoted to the position of captain. Then we've moved on. TSA was the employer. TSH, as we argued, should not have been determined to be a successor of interest. So, TSH presented as much evidence as it could based upon what TSA actually did. Any further questions on that point? Okay, then I will just conclude. USARA does provide for protections for the plaintiff. However, as this court referenced recently, in Selman, it's not a catch-all statute. And that was the October 21st, 2025 decision, Selman versus Horizon, which the court said, it doesn't create another right for disability protection. USARA has its limits, and the fishbowl decision from the Supreme Court specifically says it doesn't go beyond the purview of the specific statute or provide additional rights outside of statute. With regard to the issue about whether it's exclusively an issue that should be reserved for the jury, I think the Terran court, which is cited by the plaintiff, was determined by the Ninth Circuit to no longer be binding because it wasn't a USARA case and related to a decision and a law that doesn't specifically have the USARA burden-shifting requirements. All right. Thank you, counsel. We appreciate your arguments. Mr. Mitchell, you have some rebuttal time in court. Just some quick cleanup, Your Honor. Number one is counsel mentioned the Velazquez versus Horizon Airlines. That is a case out of the First Circuit from 2007. And that case actually addresses a question that I think everyone on the panel has asked so far. And that's that if the statement was made by someone who is a non-decision maker, can it be considered as evidence in a USARA case? And that case found that it was error for the court to disregard the statement simply because it came from a non-decision maker. And do you concede that Mr. Zender is a non-decision maker here? Absolutely not, Your Honor. It's clear that he was part of the decision-making process. That email that is at 365 was sent to him. In-house counsel David J.A. Hayes III then emailed back to Randy Zender and said, why does Ken Porter's name ring a bell with me? So there were conversations about this. Stuart Scott said- Well, I mean, I think that that email indicates that his input was solicited. Correct. But I'm not sure it tells us that he was a decision maker. You know, if you ask for- if somebody contacts me for a reference for one of my law clerks, you know, they've asked for my input, but I'm not a decision maker about whether they hired the law clerk, right? Correct. But if you were part of the process, which that email would indicate, and you had personal knowledge about why the decision was made, and I asked you and you told me it's because you do too much military service, Mr. Mitchell, then we would have a situation of someone who was clearly, the record shows, was part of the communications and disclosed to me a basis for the decision why it was made. Where in the record- Go ahead, judge me. No, I'm sorry. Where in the record did you challenge the company's position on lack of temperament, leadership ability? It's in Mr. Porter's deposition testimony. He spoke about his history with the company. He also, in his declaration at paragraph 25, he directly disputes their characterization of his history with the company. And to that end, your honor, that is a blanket statement made in the same declaration from an employee, right? They don't have any knowledge, they don't have any recollection, but they do remember that he was antagonistic and wasn't management material, which again begs the question, if that's the case, out of all the pilots that they have, why can Porter's name on a short list of only two individuals- I mean, what evidence do you rely on that Mr. Porter had personal knowledge of why the decision was made not to promote him? So the record is clear that he applied, he was considered, he was not promoted. He asked Stuart Scott, who was the decision maker, why he was not told a direct answer, and so he asked Randy Zender, who he knew would be in the know. And what's the evidence that Zender was, quote, in the know, other than Mr. Porter just thought he was? That's what Mr. Porter's deposition testimony states, is that he believed that Randy Zender was part of the decision-making process, which is one of the reasons why he directed that question to Mr. Zender, when he couldn't get a straight answer from Stuart Scott. The pension claim is not on appeal, right? Correct, your honor. Real quick to break down the statute, Sheehan factors, and how it works. Sheehan gives us factors when we don't have direct evidence of discrimination. Sheehan says here are the things that you can cobble together in inference, you know, proximity and time, other statements, things that happen. The Sheehan factors are not required factors for a service member to prove discrimination under USERRA. The Sheehan factors is a list of things that you could prove to create an inference. In this case, we don't need an inference because we have a direct statement from someone in a management position saying why. The Velazquez case that counsel brought up does say that it is error to just disregard that statement. Justice Phillips asked about other pilots and service member pilots, and the record is not clear about whether or not other service member pilots were subject to the same type of treatment. But again, as Judge McHugh suggested, it is not enough to simply say, you know, we're really nice to the military. A lot of companies advertise based on their pro-military stance. It's a great position to take, but when you overtly state, well, you also do a lot of military service, then we have a case that presents a question that needs to be submitted to a jury. And what Mr. Porter asks is that this panel reverse and remand with instructions for the district court to allow him his day in court to present these issues to the jury to see who they believe. Thank you, counsel. Any other questions from the panel? Seeing none, counsel, you are excused and the case is submitted. Thank you. Thank you, Your Honor.